OPINION *Page 2 
{¶ 1} Plaintiff the City of Lancaster appeals a judgment of the Court of Common Pleas of Fairfield County, Ohio, which stayed the proceedings between the City and defendants Shook, Inc. and Claypool Electric, Inc. and ordered the matter to be submitted to arbitration. The City assigns two errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY STAYING PROCEEDINGS IN THE TRIAL COURT AND ORDERING THE PARTIES TO ARBITRATION WHEN THERE WAS NO AGREEMENT BETWEEN THE PARTIES TO ARBITRATE THE MATTERS IN DISPUTE.
 {¶ 3} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY STAYING PROCEEDINGS IN THE TRIAL COURT AND ORDERING THE PARTIES TO ARBITRATION WHEN THE UNDISPUTED CIRCUMSTANCES DEMONSTRATE THE DEFENDANTS' WAIVER OF ANY RIGHT TO ARBITRATION AS A MATTER OF LAW."
 {¶ 4} In November 1996, the City engaged URS as its engineer for a construction project known as the Lancaster South Wellfield Water Treatment Plant. URS solicited bids for certain portions of the project. Appellee Shook was the lowest bidder on the general and mechanical work, and entered into a $14,269,000 contract with the City in June, 2001. Appellee Claypool was the lowest bidder for the electrical work on the project, and entered into a $2,725,000 contract with the City also in June 2001. Both Shook and Claypool signed identical contracts, entitled "Standard General Conditions of the Construction Contract". *Page 3 
 {¶ 5} Article 16 of the contract provides dispute resolution methods and procedures would be set out in Exhibit GC-A, entitled Dispute Resolution Agreement, which was attached to the contract and incorporated therein.
 {¶ 6} Exhibit GC-A provides at Section 16.1: "All claims, disputes, and other matters in question between OWNER and CONTRACTOR arising out of or relating to the Contract Documents or the breach thereof * * * will be decided by arbitration in accordance with the construction industry Arbitration Rules of the American Arbitration Association then obtaining, subject to the limitations of this Article 16. This agreement so (sic) to arbitrate and any other agreement or consent to arbitration entered into in accordance herewith has provided in this Article 16 will be specifically enforcible under the prevailing law of any court having jurisdiction."
 {¶ 7} Finally, there is a document entitled "Supplementary Conditions Section 00808." It provides "These Supplementary Conditions shall modify and supplement the general conditions * * * and shall govern wherever they conflict. * * *"
 {¶ 8} One of the modifications listed in this document pertains to Article 16, the dispute resolution clause. It states:
 {¶ 9} ARTICLE 16-DISPUTE RESOLUTION
 {¶ 10} "1. Replace paragraph with the following: Exhibit GC-A is hereby adopted and included as part of the Contract Documents.
 {¶ 11} "2. Add the following to the end of Article 16: Both parties must mutually agree to arbitration. Failure of a party to serve a notice accepting arbitration within ten (10) days after receipt of a written demand for arbitration shall be a rejection of arbitration." *Page 4 
 {¶ 12} Claypool, Shook, URS, and the City became involved in various disputes about the project. On July 20, 2005, Claypool and Shook sent a letter to the City's counsel demanding arbitration pursuant to the general conditions and supplementary conditions of the contracts. The demand letter explicitly stated the City had ten days to either accept or reject the arbitration demand. The City formally rejected the arbitration demand on July 21, 2005.
 {¶ 13} On December 8, 2005, the City filed its complaint against Shook, Claypool, and URS. URS is not a party to this appeal. Each filed an answer and counterclaim against the City. Shook and Claypool did not assert a right to arbitration in their pleadings. Seven months later, Shook and Claypool filed their motion for arbitration, and the trial court stayed the matter indefinitely and ordered the matter to arbitration "Pursuant to Article 16 et seq. of the general contract between the parties" JE of December 12, 2006.
 I. {¶ 14} In its first assignment of error, the City argues the contract between the parties as supplemented specifically provides the parties must mutually agree to arbitration, and gives the parties the right to reject arbitration as a method of resolving any contractual disputes. The City argues it expressly rejected Shook and Claypool's request to arbitrate, and instead, choose to litigate its claims in common pleas court.
 {¶ 15} Shook and Claypool argue the arbitration provision in the original contract unambiguously refers to Exhibit GC-A. The Supplementary Conditions Section 00808 expressly adopts Exhibit GC-A, and if any ambiguity exists between Exhibit GC-A and *Page 5 
the Supplementary Conditions Section 00808, then the ambiguity must be strictly construed against the City.
 {¶ 16} The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties.Aultman Hospital. Assn. v. Community Mutual Ins. Co. (1989),46 Ohio St.3d 51, 53. This is an objective interpretation of contractual intent based on the words the parties chose to use in the contract. SeeKelly v. Medical Life Insurance Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Id. "Common words appearing in the instrument will be given their plain and ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall contents of the contract." The Toledo Group, Inc. v. Benton Industries,Inc. (1993), 87 Ohio App.3d 798, 805, 623 N.E.2d 205, at 805,623 N.E.2d 205.
 {¶ 17} Our standard of reviewing a court's factually based decision ordering a manner to arbitration is the abuse of discretion standard,Fortune v. Castle Nursing Homes, Inc. 164 Ohio App. 3d 689,2005-Ohio-6195, 843 N.E. 2d 1216, paragraph 7, citations deleted. The term abuse of discretion implies the trial court's judgment was unreasonable, arbitrary, or unconscionable, Id. However, inFortune, we noted questions of law regarding contracts may require a case-by-case review of the facts and circumstances surrounding the agreement, but if it presents only legal questions, we review the matter de novo, Id., at paragraph 9, citations deleted.
 {¶ 18} We have reviewed the documents, and we find they are unambiguous. Supplementary Conditions Section 00808 provides it governs in case of conflict. Its *Page 6 
terms provide both parties must mutually agree to arbitration. It appears undisputed the City rejected Shook and Claypool's request for arbitration, and pursuant to contract, the City had the right to do so. We find the court erred in staying the matter and referring the matter to arbitration.
 {¶ 19} The first assignment of error is sustained.
 II. {¶ 20} In its second assignment of error, the City argues Shook and Claypool waived any rights to arbitration as a matter of law. Because of our holding supra, we do not reach this assignment of error, and it is overruled as moot.
 {¶ 21} For the foregoing reasons, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is reversed, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion.
Gwin, P.J., Hoffman, J., and Edwards, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is reversed, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion. Costs to appellees. *Page 1